GARRETT, J.
The defendants, Lucien Harry Marioneaux, Sr., Lucien Harry Marioneaux, Jr., HBM Interests, LLC, Marioneaux Properties, LP, Eighty Acres, LLC, and Wallace Lake Marioneaux, LLC, appeal from a trial court ruling granting summary judgment in favor of the intervenor, the Lela Mae Johnson Marioneaux Trust for the benefit of Harry Brewster Marioneaux, III, which dismissed the intervenor as a party in this matter.[1] For the following reasons, we reverse and remand the matter to the trial court for further proceedings.
FACTUAL AND PROCEDURAL BACKGROUND
This case arises from a dispute concerning various complex transactions that occurred following the death of Lela Mae Johnson Marioneaux ("Lela"). Lela was married to Harry Brewster Marioneaux, Sr. ("Harry"). They had three children, Lucien Harry Marioneaux, Sr. ("Lucien"), Mary Sue Marioneaux ("Sue"), and Harry Brewster Marioneaux, Jr. ("Bruce Jr."). The plaintiffs in this matter are Sue and the Lela Mae Johnson Marioneaux Trust for the benefit of Mary Sue Marioneaux ("Sue Trust").
*15 Lela executed a will in 1984, and died on February 3, 1994, survived by her husband and three children. Her estate was valued at $1.7 million. Under her will, Lela gave Harry her interest in the family home, furnishings, and automobiles, and a lifetime usufruct over all residuary property. She left the naked ownership of one-third of her residuary estate to Lucien, individually, and two-thirds to Lucien as the trustee for the Lela Mae Johnson Marioneaux Trust for the benefit of Sue and Bruce Jr. ("LMJM Trust"). The LMJM Trust received the naked ownership of real estate, stocks, bonds, and cash. The real estate included a large amount of immovable property, together with mineral rights, in DeSoto Parish with an additional 81 acres of mineral rights from property expropriated for the building of I-49.[2]
In March 2001, Bruce Jr. died intestate and was survived by one child, Harry Brewster Marioneaux, III ("Bruce III"), who was the successor beneficiary to his father's interest in the LMJM Trust.
After Lela's death, through a series of transactions, Harry donated some of his interest in the DeSoto Parish property, one-third to Lucien, and two-thirds to the LMJM Trust. According to the plaintiffs, in 2004, Lucien executed a mineral lease affecting the property. The plaintiffs claim that, instead of a lease bonus, they received a 5% interest in leases on 3,877.94 mineral acres in DeSoto Parish. In order to divide the lease interests, Lucien formed four LLCs, each of which received a 1.25% interest in the mineral leases. The parties who received a portion of the mineral interest were Harry, Lucien, the LMJM Trust, and Lucien Jr. However, the plaintiffs contend that, because the LMJM Trust owned more than one-half the immovable property, it should have gotten at least one-half of the lease interest, rather than 1.25%.
The plaintiffs claim that Lucien formed Wallace Lake Marioneaux, LLC ("WLM"), and transferred all the 5% lease interest to that entity without paying the LMJM Trust. They further maintain that Lucien then sold the lease interest from WLM to a large oil and gas company for several million dollars, and he and Lucien Jr. kept all the money. They allege that, on July 19, 2004, Lucien gave Lucien Jr. a 9% mineral interest in all 1,196 acres owned in DeSoto Parish.[3]
The transaction largely at issue in the present matter occurred in October 2005. Ostensibly as part of an estate plan for Harry, and to reduce federal estate tax exposure, Lucien began transferring assets owned by the LMJM Trust. Lucien created several entities including HBM Interests, LLC ("HBM Interests"), and HBM CMS, LLC ("HBM CMS"). Lucien and Harry transferred all their interest and all the interest of the LMJM Trust in the DeSoto Parish immovable property to HBM Interests. Lucien contributed the LMJM Trust's interest in Lela's brokerage account to HBM CMS. The plaintiffs contend that this caused a commingling of the trust assets with property owned by Lucien and Harry. The LMJM Trust's interest in these companies was then transferred to Marioneaux Properties, LP ("the Partnership"), a Texas limited partnership created by Lucien and Harry. Lucien and Harry transferred all their interests to the Partnership as well.
*16 According to the plaintiffs, in 2008 and 2009, with the discovery of the Haynesville Shale, large amounts of money began coming into the Partnership and Lucien, Lucien Jr., and Harry began taking large sums of money out of the Partnership to the detriment of the LMJM Trust. They also contend that Lucien sold Trust property to himself and to Eighty Acres, LLC, another company that he managed. The father, Harry, died in 2012.
In February 2014, Bruce III filed a suit against the same defendants involved in this suit seeking, inter alia , to declare null certain conveyances, particularly the October 2005 transfers, and to recover LMJM Trust assets wrongfully withheld or disposed of. According to the plaintiffs in the present suit, on November 17, 2014, after the alleged discrepancies regarding the LMJM Trust were brought to light in the suit filed by Bruce III, Lucien, as the trustee of the LMJM Trust, unilaterally divided that Trust into the LMJM Trust for the benefit of Harry Brewster Marioneaux, III ("Bruce III Trust"), and the Sue Trust. Lucien was initially the trustee of these new Trusts, but eventually he resigned. Sue and attorney Kyle Moore were named co-trustees of the Sue Trust in September 2015. Moore was also named the trustee of the Bruce III Trust. Moore and his law firm also represented Bruce III in the suit filed in February 2014.
In December 2014, Bruce III; the Bruce III Trust, through its trustee, Moore; Lucien; Lucien Jr.; the LMJM Trust; the Sue Trust[4] ; the Harry Brewster Marioneaux Trust; HMB Interests; the Partnership; Eighty Acres, LLC; WLM; HBM Oil and Gas, LLC; and Marioneaux Management signed a settlement agreement in which Bruce III agreed to dismiss the lawsuit in exchange for the Bruce III Trust receiving a specified tract of land - along with mineral rights, cash, and funds in brokerage accounts. The settlement specified that the various entities transferring immovable property and funds to the Bruce III Trust had "full power and authority" to make the transfer. The parties to the settlement agreed to release, acquit, and discharge each other from any other claims. The settlement included a "further instruments" clause in which the parties agreed they would execute and deliver, or cause to be executed and delivered, to the respective party such further instruments as may be necessary to effectively consummate the transactions contemplated by the agreement.
In November 2015, Sue and the Sue Trust, through its trustee, Moore, filed the present suit against Lucien, Lucien Jr., HBM Interests, the Partnership, Eighty Acres, and WLM, for a breach of trust and failure to account for LMJM Trust property, essentially the same issues that were raised in the suit filed by Bruce III. The plaintiffs are represented by the same law firm that represented Bruce III in his suit. The plaintiffs claimed that the transfers of LMJM Trust property and assets in October 2005 were absolute nullities. The suit is captioned "Petition for Preliminary and Permanent Injunction, Trust Accounting, Judgment Declaring Trust Transfers Absolute Nullities and Return of Trust Assets." The complex petition and attachments consist of 80 pages. The demands which seek to have certain transactions declared to be absolute nullities have never been amended or withdrawn.
*17 In response to the suit, the defendants filed numerous exceptions. Germane to the matter before us is the peremptory exception of nonjoinder of a necessary party. The defendants maintained that Kyle Moore, as trustee for the Bruce III Trust, should be added as a party to the action under La. C.C.P. art. 641.[5] The defendants' rationale was that Lucien's purported conveyance of the LMJM Trust's interest in DeSoto Parish property occurred before the settlement with Bruce III and the Bruce III Trust. If the prior transactions were found to be absolute nullities, it would affect title to the property transferred to the Bruce III Trust in the settlement.
The plaintiffs opposed the exception, claiming that, in the settlement agreement, the Sue Trust waived any right to attack the settlement with the Bruce III Trust, the Bruce III Trust was a good faith third party transferee under La. C.C. art. 2035, and any declaration of nullity of the transfers made by Lucien would not affect title to the immovable property now held by the Bruce III Trust.[6] They also claimed that, under the terms of the settlement, if any of Lucien's actions were declared null, the parties would be required by the "further instruments" clause in the settlement agreement to execute documents necessary to consummate the agreement.
On May 16, 2016, the trial court entered a judgment sustaining the exception of nonjoinder of a necessary party. Instead of the plaintiffs naming the Bruce III Trust as a defendant in the present suit, on June 15, 2016, the Bruce III Trust, now represented by different counsel, filed a petition of intervention. The petition outlined the details of the settlement agreement, and requested to be dismissed from the proceedings. Moore was the trustee of the Bruce III Trust. He eventually resigned as trustee in June 2016, and Marshall Burton was named as successor trustee. An amended petition of intervention was filed, reflecting this change.[7]
On December 19, 2016, the intervenor, the Bruce III Trust, filed the motion for summary judgment at issue here, seeking to be dismissed from this suit. Attached to the motion was a copy of the December 2014 settlement agreement described above. The Bruce III Trust claimed that the plaintiffs agreed to abide by the terms of the settlement between the defendants and the Bruce III Trust and noted that the defendants had made no claims against it.[8]
*18 The Bruce III Trust urged that, if any of the conveyances were found to be null, the settlement would stand, because the Bruce III Trust is a good faith third party transferee of the property received in the settlement and entitled to the protection afforded by La. C.C. art. 2035. Therefore, the Bruce III Trust argued that it should be dismissed from this suit.
The defendants opposed the motion for summary judgment, arguing that, if the transfer of the LMJM property to HBM Interests, and ultimately to the Partnership, was a nullity, then the Partnership did not have good title to convey to the Bruce III Trust in the settlement. The defendants argued that the plaintiffs in the main demand were seeking to annul the 2005 transfers of immovable property and other assets on the ground that it was an absolute nullity, and the Bruce III Trust settlement relies upon the validity of those transactions. The defendants contended that the 2005 transfers cannot simultaneously be absolute nullities and the valid basis for the title to property held by the Bruce III Trust.
On July 28, 2017, the defendants filed a supplemental opposition to the motion for summary judgment, attaching an affidavit from a CPA, Elizabeth Killough. The affidavit outlined the effects on the case if the trial court found that the 2005 transfers were absolute nullities. She averred that such a decision would nullify portions of Harry's estate plan, meaning that certain assets would not have passed out of his estate. According to the defendants, because Harry left his estate to Lucien and Sue, his surviving children, and not to Bruce III, his grandson, it would then become necessary to restore to Harry's estate some of the assets received in the settlement by the Bruce III Trust. According to Killough, declaring the 2005 transfers to be absolute nullities would require the Bruce III Trust to return approximately $850,106, as well as immovable property and mineral interests.
Also in July 2017, the defendants filed a reconventional demand and cross-claim against Moore, as trustee of the Sue Trust, and as former trustee of the Bruce III Trust; Sue; Marshall Burton, the current trustee of the Bruce III Trust; and Bruce III. The defendants alleged that, in the settlement agreement with the Bruce III Trust, the plaintiffs admitted the prior transfers of assets by the defendants were valid and were not absolute nullities. The defendants point out that Moore authored the settlement, which recognized the disputed transfers as valid, but, when the present suit was filed on behalf of the Sue Trust, he alleged that the transfers were invalid. If the trial court granted relief to the plaintiffs in this suit and found the 2005 transfers to be invalid, the defendants contend that they would be entitled to rescission of the settlement agreement. They asked for that relief in their pleading.[9]
*19 The motion for summary judgment, along with other matters, was argued before the trial court on August 3, 2017. The Bruce III Trust asserted that any decision by the trial court as to the validity of the various transfers of assets from the LMJM Trust would not undo the settlement with the Bruce III Trust because under La. C.C. art. 2035, the Bruce III Trust and all others who, in good faith, received title to any of the property in the various transactions would not lose their rights to the property. If the transfers were found to be null and the assets could not be returned, the legal remedy would be for the defendants to pay damages. Also, according to the Bruce III Trust, Sue and the Sue Trust had no objection to what the Bruce III Trust received in the settlement.
The defendants argued that, if the trial court finds that the October 2005 transfers are nullities, the title to property held by the Bruce III Trust will be affected. They contended that the transfer cannot be both a nullity and a valid instrument in the chain of title for the Bruce III Trust. The defendants also maintained that, because Bruce III was not a third party transferee in good faith, La. C.C. art. 2035 would not preserve the title of the Bruce III Trust. The defendants also pointed out that the reconventional demand and cross-claim against Moore, as trustee of the Sue Trust, and as former trustee of the Bruce III Trust; Sue; Marshall Burton, the current trustee of the Bruce III Trust; and Bruce III had been filed after the motion for summary judgment, which placed at issue the validity of the settlement agreement.
The trial court ultimately reasoned that, no matter what the decision might be on the merits, under the "further instruments" provisions in the settlement agreement, *20 documents would have to be executed to put the Bruce III Trust in the same position it held after the settlement. The court found that it would be a waste of time and finances to require the Bruce III Trust to participate in this litigation and granted the summary judgment. On August 8, 2017, the trial court signed a judgment granting summary judgment in favor of the Bruce III Trust, dismissing it from the suit, at the defendants' cost. The judgment also dismissed the cross-claim of the defendants against the Bruce III Trust.[10] The defendants appealed.
MOTION FOR SUMMARY JUDGMENT
On appeal, the defendants argue that the trial court erred in granting summary judgment in favor of the Bruce III Trust, releasing it from participation in these proceedings. The defendants urge that, if the October 2005 transfers of assets out of the LMJM Trust are found to be absolutely null, then the conveyance of property to the Bruce III Trust would also be invalid. They contend this creates genuine issues of material fact regarding the effect of declaring absolutely null a conveyance in the chain of title of property given to the Bruce III Trust in the settlement. They also claim that the trial court erred in dismissing their cross-claim against the Bruce III Trust. These arguments have merit.
Legal Principles
We note that, where a litigant has been found to be a necessary party to a suit and intervenes, the use of a motion for summary judgment asking to be released from the lawsuit is rather unusual. However, this is how this case has been handled and presented to us and we will conduct our review using the law applicable to appeals from the grant of a motion for summary judgment.
Appellate courts review motions for summary judgment de novo , using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. Peironnet v. Matador Res. Co. , 2012-2292 (La. 6/28/13), 144 So.3d 791 ; Bank of Am., N.A. v. Green , 52,044 (La. App. 2 Cir. 5/23/18), 249 So. 3d 219, 2018 WL 2325024.
A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. Schultz v. Guoth , 2010-0343 (La. 1/19/11), 57 So.3d 1002. Summary judgment procedure is favored and is designed to secure the just, speedy and inexpensive determination of actions. La. C.C.P. art. 966(A)(2).
A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).
A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. Jackson v. City of New Orleans , 2012-2742 (La. 1/28/14), 144 So.3d 876, cert. denied , --- U.S. ----, 135 S.Ct. 197, 190 L.Ed. 2d 130 (2014). In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony, or *21 weigh evidence. Chanler v. Jamestown Ins. Co. , 51,320 (La.App. 2 Cir. 5/17/17), 223 So.3d 614, writ denied , 2017-01251 (La. 10/27/17), 228 So.3d 1230.
The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).
Discussion
In its motion for summary judgment, the Bruce III Trust claimed that any and all claims that could have been asserted against or by the Bruce III Trust have been irrevocably settled or compromised. The only attachment to the motion was the copy of the December 2014 settlement agreement. The Bruce III Trust also argued in its motion that no party had asserted any claims against it.
After the Bruce III Trust filed its motion for summary judgment, the defendants filed a cross-claim and reconventional demand asserting that the claims made in this lawsuit attack the terms of the settlement and constitute a breach of that agreement. According to the defendants, if the 2005 transfers of property are declared to be null, good title was not conveyed to the Bruce III Trust in the settlement agreement. If the 2005 transfers were null, the defendants claim it is as though the transfers never occurred and the parties must be placed in the same positions they occupied before the transfers.
The defendants also argued in their reconventional demand and cross-claim that, in this suit, when the Sue Trust alleged that the 2005 transfers were absolute nullities, it attacked the terms of the settlement agreement in which it had admitted that those transfers were valid. The defendants argue this constitutes a breach of the settlement agreement, entitling them to rescission of the settlement.
At the core of this dispute is whether the 2005 transfers from the LMJM Trust were absolute nullities and, if they were, what effect that would have on the settlement with the Bruce III Trust. The defendants maintain that the October 2005 transfer cannot be both an absolute nullity and the valid basis for the conveyance of property to the Bruce III Trust. The defendants point out that their cross-claim against the Bruce III Trust seeks to rescind the settlement if the 2005 conveyances are found to be null. The defendants urge that there is still a genuine issue of material fact as to whether this relief may be granted. The defendants also contend that, according to the affidavit of their CPA, if the 2005 transfers are found to be null, the Bruce III Trust might be called upon to restore a large sum of money, as well as immovable property and mineral rights.
The plaintiffs and the Bruce III Trust assert that any and all claims that could have been asserted against the Bruce III Trust have been irrevocably settled and compromised in the settlement agreement. They maintain that, even if some claims were not settled, the Bruce III Trust is a third party in good faith and would have clear title to the property received in the settlement by operation of La. C.C. art. 2035. They also maintain that any remedy the plaintiffs would have if the 2005 conveyances *22 were found to be null would be limited to the recovery of damages and not the return of property.
The trial court did not specifically address all of these complex legal issues. Instead, the trial court focused on the "further instruments" clause as the simple device which would somehow cure all the complicated issues presented here. The trial court did not give adequate consideration to the current procedural posture of the case, which changed after the reconventional demand and cross-claim were filed.
Based upon this record, we find that unresolved legal issues and genuine issues of material fact are presented in this extremely complex suit, which preclude the granting of summary judgment. The Bruce III Trust has failed to show conclusively that the Trust's property rights received in the settlement would be completely unaffected if the trial court ruled that the 2005 transfers were absolute nullities.
The Bruce III Trust claims, in the alternative, that it is a third party in good faith, and its title to property received in the settlement is automatically protected by the provisions of La. C.C. art. 2035. However, the Bruce III Trust makes only a bare assertion that this provision applies here. Reasonable persons could disagree as to whether the facts presented show that the Bruce III Trust is a third party in good faith under La. C.C. art. 2035. Accordingly, there is a genuine issue of material fact on this issue.
Although the trial court reasoned that the "further instruments" clause in the settlement would require the parties to execute documents to preserve the settlement, Sue, individually, was not a party to the agreement. There is a genuine issue of material fact as to whether the "further instruments" clause in the settlement agreement would necessarily preserve the Bruce III Trust's title to the property received in the settlement.
The trial court originally determined that the Bruce III Trust was a necessary party to these proceedings. The Bruce III Trust has failed to show that there is no possible scenario in which the settlement and the title to the property received by the Bruce III Trust might be called into question.[11] Therefore, the Bruce III Trust is not entitled to summary judgment.
The trial court erred in granting summary judgment in favor of the Bruce III Trust. The trial court also erred in dismissing the defendants' cross-claim against the Bruce III Trust.
CONCLUSION
For the reasons stated above, the trial court judgment granting summary judgment in favor of the intervenor, the Bruce III Trust, and dismissing the defendants'
*23 cross-claim against the Bruce III Trust, is reversed. The matter is remanded to the trial court for further proceedings. Costs in this court are assessed to the Bruce III Trust.
REVERSED AND REMANDED.

Lucien Sr. died in July 2016. By consent motion, Lucien Jr., as administrator of his father's succession, was substituted in this case. Lucien Jr. was also named as a defendant in his individual capacity.

The Marioneauxs apparently owned almost 1,200 acres of land in DeSoto Parish.

According to the plaintiffs, Lucien claimed this was compensation for legal work to Lucien Jr., who was an associate with a Shreveport law firm.

Sue was not a party to the settlement agreement. Lucien, in his then-capacity as trustee for the LMJM Trust (which had been divided into two trusts in November 2014) and the "Lela Mae Johnson Marioneaux Trust # 2," executed the settlement agreement. We surmise that the "Lela Mae Johnson Marioneaux Trust # 2" is the Sue Trust, but the settlement document is confusing.

La. C.C.P. art. 641 provides:
A person shall be joined as a party in the action when either:
(1) In his absence complete relief cannot be accorded among those already parties.
(2) He claims an interest relating to the subject matter of the action and is so situated that the adjudication of the action in his absence may either:
(a) As a practical matter, impair or impede his ability to protect that interest.
(b) Leave any of the persons already parties subject to a substantial risk of incurring multiple or inconsistent obligations.

La. C.C. art. 2035 provides:
Nullity of a contract does not impair the rights acquired through an onerous contract by a third party in good faith.
If the contract involves immovable property, the principles of recordation apply to a third person acquiring an interest in the property whether by onerous or gratuitous title.

The defendants filed a motion to disqualify Moore and his law firm as plaintiffs' counsel, claiming a conflict of interest between his representation of the plaintiffs and his former representation of the Bruce III Trust, noting that Moore is a necessary witness in the case. The motion was denied without prejudice by the trial court on January 19, 2017.

At the time the motion for summary judgment was filed, there were no claims pending against Bruce III or the Bruce III Trust. However, as explained infra , this soon changed because the defendants filed claims against Moore, as trustee of the Sue Trust, and as former trustee of the Bruce III Trust; Sue; Marshall Burton, the current trustee of the Bruce III Trust; and Bruce III. Therefore, one of the central arguments made in the motion for summary judgment, which was never supplemented, was incorrect by the time the motion for summary judgment was argued.

After the filing of the intervenor's motion for summary judgment, but before the argument on that issue, numerous exceptions and motions for partial summary judgment were also filed. Some of the rulings on these various issues occurred close in time to the August 3, 2017 ruling on the motion for summary judgment at issue here.
On May 8, 2017, the defendants filed an exception of res judicata , arguing that the plaintiffs' claims in this suit are foreclosed by the settlement reached with the Bruce III Trust. On August 15, 2017, the trial court sustained the exception as to the claims of the Sue Trust that the October 2005 conveyance of immovable property from the LMJM Trust to HBM Interests was a nullity. The exception was denied as to Sue individually.
On November 30, 2017, after the ruling on the motion for summary judgment at issue here, the defendants filed another exception of res judicata , noting that the trial court previously held that the transfer of immovable property in October 2005 is not subject to a claim of nullity by the Sue Trust because that Trust participated in the settlement agreement with Bruce III and his Trust in which the transfer was relied upon by the parties to resolve the lawsuit. According to the defendants, the Sue Trust cannot now continue to claim that the October 2005 transfer of cash and securities to HBM CMS was an absolute nullity. This motion apparently has not been ruled on. On February 2, 2018, this court stayed the proceedings in the trial court pending resolution of this appeal.
On June 30, 2017, the defendants filed a motion for partial summary judgment to declare the October 2005 conveyance by Lucien, as trustee of the LMJM Trust, to HBM Interests to be valid. According to the defendants, the parties agreed that the transfer of immovable property was made to HBM Interests in exchange for a membership interest in that company. The plaintiffs filed a motion for partial summary judgment to have this same transaction declared to be an absolute nullity. On August 28, 2017, shortly after the grant of summary judgment in favor of the intervenor in this case, the trial court denied both the plaintiffs' and the defendants' motions on this issue. Therefore, the validity of the October 2005 transfer is still before the trial court.
On July 20, 2017, the plaintiffs filed motions for partial summary judgment to have the mineral deed to Lucien Jr. on July 19, 2004, and a transfer of 285 acres of property from the LMJM Trust to Lucien individually, declared absolute nullities. On August 28, 2017, the trial court denied partial summary judgment on the claim that the February 2010 transfer to Lucien was an absolute nullity. The trial court granted the plaintiffs' motion for partial summary judgment finding the July 19, 2004 mineral deed to Lucien Jr. to be an absolute nullity. To say that this matter has progressed in a piecemeal manner would be an understatement.

We note that the defendants' claims against Bruce III, in his individual capacity, were not included in the motion for summary judgment and have not been dismissed.

We acknowledge the Trust's contention that it should not have to incur legal expenses to participate in this litigation. However, the defendants did not institute this complex suit which seeks to have transactions declared absolute nullities. The plaintiffs have not amended the suit to delete these nullity claims. We observe that one of the provisions of the settlement agreement provides:
6.2 Specific Performance and Attorney Fees. Each party to this Agreement shall be entitled to enforce specific performance hereof in addition to any other remedy at law or as provided in this Agreement. In the event of any litigation arising under this Agreement, the prevailing party, in addition to other rights and damages, shall be entitled to reimbursement for reasonable attorney's fees and costs . [Emphasis supplied.]
Perhaps Bruce III and the Bruce III Trust may have some recourse to recoup legal expenses. We express no opinion on this issue.