Judgment rendered April 22, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,101-CW
No. 53,332-CA
(Consolidated Cases)

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

No. 53,101-CW

KATHY HARRIS
Respondent

versus

CITY OF SHREVEPORT
Applicant

No. 53,332-CA

KATHY HARRIS
Plaintiff-Appellant

versus

CITY OF SHREVEPORT
Defendant-Appellee

* * * * *

On Application for Writs and On Appeal
from the First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 597,766

Honorable Ramon Lafitte, Judge

* * * * *

STROUD, CARMOUCHE & BUCKLE
By: Nichole M. Buckle

Counsel for
Applicant-Appellee,
City of Shreveport

MIRAMON LAW, INC.
By: Patricia N. Miramon
   Jordan Nicole George Young

Counsel for
Respondent-Appellant
Kathy Harris

CASTEN & PEARCE                          Counsel for
By: Marshall Reeves Pearce                Respondent-Appellee
                                          Deborah Renee Jackson


DALE G. COX, JR.                          Counsel for Respondent
                                          Caddo Parish School Board



* * * * *



Before MOORE, STEPHENS, and McCALLUM, JJ.

**STEPHENS, J.**

This matter involves a writ grant to docket consolidated with an appeal, both stemming from a lawsuit by plaintiff, Kathy Harris, in the First Judicial District Court, Parish of Caddo, State of Louisiana. Her claims are against defendants, the City of Shreveport (the "City") and Deborah Renee Jackson. In response to Harris's petition, the City and Jackson filed separate motions for summary judgment; the City's motion was denied and Jackson's motion was granted. It is those judgments we consider on review.

## FACTS AND PROCEDURAL HISTORY

Kathy Harris filed a personal injury lawsuit against defendants, alleging that as part of her employment with the Caddo Parish School Board, she went to check the reading on the water meter for Westwood Elementary School on February 6, 2016.[1] Returning to the school grounds via a sidewalk, Harris veered off the sidewalk and tripped and fell into a hole containing another city water meter. That hole was near the sidewalk adjacent to a residence located at 7414 Timberview Lane, Shreveport, owned by Jackson. As described by Harris, both feet went down into the hole, and she hit a parking sign pole as she fell. According to Harris, her alleged accident occurred in an area "under the care, custody, and control" of the City and Jackson. Specifically, Harris stated the City was aware of the defects in the area because its meter readers regularly assessed the area when reading the meter, and Jackson was aware of the area because she was responsible for the grass around the hole.

---

[1] Ultimately, the Caddo Parish School Board intervened as the applicable workers' compensation carrier.

Jackson filed a motion for summary judgment, asserting she was not responsible for maintenance or care of the open water meter causing Harris's fall, and she had no prior notice of any issue with the water meter located in front of her property.

The City also filed a motion for summary judgment, arguing Harris could not establish the essential elements of her claims of negligence and strict liability. The City asserted Harris could not show that the water meter created an unreasonable risk of harm or the City had actual or constructive notice of the condition, two required elements of her claim against a public entity for damages due to a defective thing. The City maintained the uncovered water meter was not an unreasonably dangerous condition because its condition was open and obvious, and the condition existed in a grassy area that covered an irregular, uneven surface. The City further argued Harris offered no proof it had any notice, either actual or constructive, that the water meter cover was damaged or missing, and offered no evidence to demonstrate the water meter was uncovered prior to her accident for a period of time sufficient to inpute knowledge to the City.

Harris opposed the motions for summary judgment, relying on the expert opinion of Philip Beard, a professional engineer. In addition to Beard's report, the court considered the depositions of Harris and Jackson. Following arguments, the trial court signed a written judgment, granting the motion for summary judgment in favor of Jackson, dismissing all claims of Harris and the Caddo Parish School Board against her. Harris's application for supervisory review followed. Concluding the trial court's ruling was a final appealable judgment, the matter was remanded to the trial court for

2

perfection as an appeal. Thus, the matter is before this court as an appeal. *Harris v. City of Shreveport*, 53,088-CW (La. App. 2 Cir. 7/11/19).

As to the City's motion, it was denied by the trial court, which determined that the broken cover on the water meter in a hole measuring 19 inches deep was not a minor hazard or condition to be expected in a yard. Further, the trial court concluded there was a question of fact as to whether the condition existed when the water meter was checked by the City on January 12, 2016. The trial court subsequently signed a written judgment, memorializing the ruling made in open court, and an application for supervisory review by the City followed. The writ was granted to docket for review. *Harris v. City of Shreveport*, 53,101-CW (La. App. 2 Cir. 7/25/19).

## DISCUSSION

*Legal Principles: Summary Judgment*

On review are two motions for summary judgment by both defendants, Jackson and the City; as stated, the trial court granted Jackson's motion and denied the City's. Appellate courts review motions for summary judgment *de novo*, using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. *Peironnet v. Matador Res. Co.*, 2012-2292, 2012-2377 (La. 6/28/13), 144 So. 3d 791; *Marioneaux v. Marioneaux*, 52,212 (La. App. 2 Cir. 8/15/18), 254 So. 3d 13.

A motion for summary judgment is a procedural device used when there is no genuine issue of material fact for all or part of the relief prayed for by a litigant. *Schultz v. Guoth*, 2010-0343 (La. 1/19/11), 57 So. 3d 1002; *Marioneaux*, *supra*. Summary judgment procedure is favored and is designed to secure the just, speedy, and inexpensive determination of actions. La. C.C.P. art. 966(A)(2). A motion for summary judgment shall

3

be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3).

A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Jackson v. City of New Orleans*, 2012-2742, 2012-2743 (La. 1/28/14), 144 So. 3d 876, *cert. denied*, 574 U.S. 869, 135 S. Ct. 197, 190 L. Ed. 2d 130 (2014); *Marioneaux*, *supra*. In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. *Marioneaux*, *supra*; *Chanler v. Jamestown Ins. Co.*, 51,320 (La. App. 2 Cir. 5/17/17), 223 So. 3d 614, *writ denied*, 2017-01251 (La. 10/27/17), 228 So. 3d 1230.

The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).

4

*Legal Principles: Premises Liability*

Generally, La. C.C. art. 2317 states, "We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody." More specifically, La. C.C. art. 2317.1 provides in pertinent part,

> The owner or custodian of a thing is answerable for damage occasioned by its ruin, vice, or defect, only upon a showing that he knew or, in the exercise of reasonable care, should have known of the ruin, vice, or defect which caused the damage, that the damage could have been prevented by the exercise of reasonable care, and that he failed to exercise such reasonable care.

Additionally, a public entity is responsible for damages caused by the condition of buildings within its care and custody. La. R.S. 9:2800.

To recover for damages caused by a defective thing, the plaintiff must prove the thing was in the defendant's custody, the thing contained a defect which presented an unreasonable risk of harm to others, this defective condition caused the damage, and the defendant knew or should have known of the defect. *Wells v. Town of Delhi*, 51,222 (La. App. 2 Cir. 4/5/17), 216 So. 3d 1095, *writ denied*, 2017-0753 (La. 9/22/17), 227 So. 3d 821; *Moody v. Blanchard Place Apts.*, 34,587 (La. App. 2 Cir. 06/20/01), 793 So. 2d 281, *writ denied*, 2001-2582 (La. 12/14/01), 804 So. 2d 647.

Furthermore, to recover against a public entity for damages due to a defective thing, a plaintiff must prove: (1) the thing which caused the damage was in the custody of the public entity; (2) the thing was defective due to a condition creating an unreasonable risk of harm; (3) the entity had actual or constructive notice of the condition yet failed to take corrective action within a reasonable period of time; and (4) the defect was a cause of

plaintiff's harm. *Jones v. Hawkins*, 1998-1259, 1998-1288 (La. 3/19/99), 731 So. 2d 216; *Wells, supra*; *Ricks v. City of Shreveport*, 42,675 (La. App. 2 Cir. 10/24/07), 968 So. 2d 863. Failure to meet any one statutory element will defeat a negligence claim against a public entity. *Breitling v. Shreveport*, 44,112 (La. App. 2 Cir. 5/13/09), 12 So. 3d 457, *writ not cons.*, 2009-1330 (La. 9/25/09), 18 So. 3d 95.

Courts have adopted a risk-utility balancing test to determine whether a condition is unreasonably dangerous, wherein the trier of fact balances the gravity and the risk of harm against the individual and societal utility and the cost and feasibility of repair. *Chambers v. Vill. of Moreauville*, 2011-898 (La. 1/24/12), 85 So. 3d 593; *Stevens v. City of Shreveport*, 49,437 (La. App. 2 Cir. 11/19/14), 152 So. 3d 1071, *writ denied*, 2015-0197 (La. 4/17/15), 168 So. 3d 399, *cert. denied*, --- U.S. ---, 136 S. Ct. 154, 193 L. Ed. 2d 114 (2015); *Dowdy v. City of Monroe*, 46,693 (La. App. 2 Cir. 11/2/11), 78 So. 3d 791. Although municipalities have a duty to maintain things in their custody in a reasonably safe condition, they are not insurers of the safety of pedestrians and are not required to maintain things in their custody in perfect condition. To be liable for damages caused by a defect, the defect must be dangerous or calculated to cause injury. *Chambers*, *supra*.

However, defendants generally have no duty to protect against an open and obvious hazard. If the facts of a particular case show that the complained-of condition should have been obvious to all, the condition may not be unreasonably dangerous, and the defendant may owe no duty to the plaintiff. *Broussard v. State ex rel. Office of State Bldgs.*, 2012-1238 (La. 4/5/13), 113 So. 3d 175; *Flipping v. JWH Properties, LLC*, 50,648 (La. App. 2 Cir. 6/8/16), 196 So. 3d 149.

Before a municipality can be held liable for injuries resulting from a defect in the condition of a thing in its custody, the municipality must have had actual or constructive notice of the particular defect that gave rise to the injury. *Stevens*, *supra*. Failure to meet this statutory element will defeat a negligence claim against a public entity. Actual notice is knowledge of dangerous defects or conditions by a corporate officer or employee of the public entity having a duty either to keep the property involved in good repair or to report defects and dangerous conditions to the proper authorities. *Smithwick v. City of Farmerville*, 45,362 (La. App. 2 Cir. 6/23/10), 42 So. 3d 1039, *writ denied*, 2010-2013 (La. 11/12/10), 49 So. 3d 888.

Constructive notice is defined by La. R.S. 9:2800 as the existence of facts which imply actual knowledge. Ordinarily, to establish constructive notice, plaintiffs must prove that the defect causing the injury existed over a sufficient length of time to establish that reasonable diligence would have led to its discovery and repair. *Stevens*, *supra*; *Smithwick, supra*. The plaintiff must make a positive showing of the existence of the condition prior to the fall. *Ton v. Albertson's, LLC*, 50,212 (La. App. 2 Cir. 11/18/15), 182 So. 3d 246, *writ denied*, 2015-2320 (La. 2/5/16), 186 So. 3d 1169.

*The City's Motion for Summary Judgment*

On review, the City argues that its motion for summary judgment should have been granted because Harris could not meet her burden of proving each essential element of her claim. The City asserts that in granting Jackson's motion, the trial court properly found Jackson's grass was not unreasonably high to cover the water meter hole. First, the City maintains the water meter hole was located in Jackson's grassy yard adjacent to the sidewalk and in an area not intended for pedestrian traffic. As such,

7

the hole did not present an unreasonable risk of harm. Second, the City argues Harris offers only speculation and conjecture of the City's actual or constructive knowledge of the condition, and she does not offer sufficient issues of material fact regarding the City's knowledge. We disagree.

Here, because the City will not bear the burden of proof at trial, it is not required to negate all essential elements of Harris's claim, but rather need only point out the absence of factual support for one or more essential element. The burden is then on Harris to produce factual support sufficient to establish the existence of a genuine issue of material fact. Of the various elements in a premises liability case against a municipality, at issue in this case are whether the open water meter created an unreasonable risk of harm and whether the City had actual or constructive notice of the open water meter. We believe genuine issues of material fact exist as to each of those elements.

Initially, we observe Harris's reliance on the expert report and affidavit of a professional engineer, Beard, supporting her opposition to the City's motion. Notably, when the party opposing the summary judgment motion submits expert opinion evidence that would be admissible and is sufficient to allow a reasonable fact finder to conclude the expert's opinion on a material fact more likely than not is true, the court should deny the summary judgment motion. *Willis v. Medders*, 2000-2507 (La. 12/8/00), 775 So. 2d 1049; *Wood v. State, ex rel. Dep't of Wildlife & Fisheries*, 43,457 (La. App. 2 Cir. 8/13/08), 989 So. 2d 280, *writ denied*, 2008-2192 (La. 11/14/08), 996 So. 2d 1094. Although the trial court's reasons for judgment are unclear as to what consideration it gave to Beard's report, we find a genuine issue of material fact was created by the inferences reasonably

8

drawn from Beard's affidavit, which sufficiently addresses both elements at issue.

As to whether the water meter in question created an unreasonable risk of harm, we observe the record reflects varying degrees of size for the hole; however, one fact is clear—it was a large hole.  Although Harris could not specifically state its depth, her deposition testimony was that it came up to her knees when she fell into it.  Beard's expert report elaborates more on the size and condition of the site.  As noted by Beard, Harris's photographs reveal parts of the meter's broken concrete collar that originally surrounded the meter cover.  Beard's report described the actual hole as follows:

> Various views of the accident situs water meter after repairs. . . .
> The depth of the meter housing to the grade below was measured
> and found to be approximately, 19 inches ±.  Although the depth
> of the hole that Ms. Harris fell into is unknown, more likely than
> not it was greater than 19 inches before repairs were made.  An
> interesting observation in photograph P13 is that the actual water
> meter is not visible.  It is likely that the [hole] has been filled
> with mud such that the meter is buried and not visible.  That
> would make the overall depth of the [hole] between 21 ± inches
> and 25 ±.

Beard observed there was no lid or cap on the water meter to warn of the potentially dangerous condition presented by the hole.  It was his expert opinion that the depth of the hole greatly exceeded "acceptable deviations necessary to prevent tripping in a pedestrian's path of travel.  As a result, the defect is unreasonably hazardous."  Thus, according to Beard, this hole constituted an unreasonable risk of harm.

As noted herein, municipalities have a duty to maintain things in their custody in a reasonably safe condition; however, they are not insurers of the safety of pedestrians and are not required to maintain things in their custody in perfect condition.  Furthermore, to be liable for damages caused by a

9

defect, the defect must be dangerous or calculated to cause injury. Considering Harris's description buttressed by Beard's expert opinion, we conclude Harris has established such a fact, *i.e.*, the water meter hole constituted an unreasonable risk of harm. Thus, as to that issue, there exists a genuine issue of fact making summary judgment inappropriate.

Regarding whether the City had actual or constructive notice of the open water meter, Harris's photographs indicate the probability the hole had been uncovered for some period of time. In fact, in Beard's report he opined that, considering the nature of the defect to the meter, it had existed at least a month prior to Harris's incident. Furthermore, and of most importance, the record reflects the water meter had been read on January 12, 2016, by a City employee presumably with some level of experience with water meters. There is a method to the City's reading and inspection of its meters— periodically the City has its employees physically inspect its water meters for usage readings. Clearly, it is reasonable to expect a City employee would recognize defects or imperfections in the City's equipment which would reasonably be a hazard to the public. Considering the nature of the defect as well as Beard's opinion regarding the longevity of the deleterious nature of the water meter, we conclude there exists genuine issues of fact on whether the City had notice of the defect.

Thus, considering the available evidence, we agree with the trial court. Here, there exists a material issue of fact whether the water meter in question created an unreasonable risk of harm to Harris. Additionally, there is also a material issue of fact as to whether the City had actual or constructive notice of the condition of its water meter. As such, the City's

motion for summary judgment was properly denied, and the City's assignments of merit are without merit.

*Jackson's Motion for Summary Judgment*

As to the trial court's granting of Jackson's motion for summary judgment, Harris argues the trial court erred in granting the motion on the issue of liability and in determining no genuine issues of material fact existed regarding Jackson's duty to maintain her property. We disagree.

The duty a landowner owes to persons entering his or her property is governed by a standard of reasonableness, and a potentially dangerous condition that should be obvious to all is not unreasonably dangerous. If the facts of a particular premises liability case show that the complained of condition should be obvious to all, the condition may not be unreasonably dangerous, and the defendant may owe no duty to the plaintiff. *Todd v. Angel*, 48,687 (La. App. 2 Cir. 1/15/14), 132 So. 3d 453, *writ denied*, 2014-0613 (La. 5/16/14), 139 So. 3d 1027; *Durmon v. Billings*, 38,514 (La. App. 2 Cir. 5/12/04), 873 So. 2d 872, *writ denied*, 2004-1805 (La. 10/29/04), 885 So. 2d 588.

In the case *sub judice*, the issue is whether Jackson knew or should have known her grass obstructed Harris's vision of the defective water meter hole, thus creating a duty to Harris, who strayed into her yard. Knowledge is key to Harris's claim against Jackson—she must prove that Jackson knew or, in the exercise of reasonable care, should have known of the defective condition. Notably, it is not reasonable to expect a grassy area would always be a "table-top" smooth surface. *Johnson v. City of Monroe*, 38,388 (La. App. 2 Cir. 4/7/04), 870 So. 2d 1105, *writ denied*, 2004-1130 (La. 6/25/04), 876 So. 2d 843. Moreover, it takes more than mere argument of a possibility

11

to raise a genuine issue of fact. *Hawkins v. Fowler*, 2011-1495 (La. App. 1 Cir. 5/2/12), 92 So. 3d 544, *writ denied*, 2012-1449 (La. 10/8/12), 93 So. 3d 860.

Here, all of the evidence indicates that while the hole under the overgrown grass on Jackson's property was hidden, the unmaintained condition of the property would have been obvious to everyone, including Harris. However, ultimately the overgrown grass around the hole was not the cause of Harris's injury. Harris's uninvited entrance onto Jackson's yard in lieu of the sidewalk and the existence of the broken water meter in the hole potentially caused the injury. Notably, Harris testified she did not see the hole because it was covered by the grass, but Harris also described she was looking "straight ahead," *i.e.*, she was not looking down where she was walking. But for the defective water meter and/or large hole, Harris would not have been injured. The same cannot be said of the uncut grass. Thus, Harris cannot establish Jackson had a duty to protect her against the dangerous condition.

Given the undisputed facts and evidence in this case, we find no error in the trial court's grant of summary judgment in favor of Jackson. Harris failed to prove Jackson should have known the grass in her yard was obscuring a hole containing a broken water meter, which lay beneath the surface of the grass on her property and, thus, Harris cannot prove a duty owed by Jackson. In the absence of any factual support showing that Harris could meet this burden at trial, summary judgment is mandated. *See Gifford v. Arrington*, 2014-2058 (La. 11/26/14), 153 So. 3d 999, 1000 ("if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no

12

genuine issue of material fact"). We therefore affirm the trial court's judgment dismissing Harris's claims against Jackson.

## CONCLUSION

The trial court's judgment granting the motion for summary judgment by Deborah Renee Jackson is affirmed. Appeal costs by Kathy Harris are assessed to her. The trial court's judgment denying the motion for summary judgment of the City of Shreveport is also affirmed. Pursuant to La. R.S. 13:5112, the appellate court costs in the amount of $2,570.00 incurred in connection with the supervisory writ filed by the City of Shreveport are assessed to the City, which have already been paid.

**JUDGMENTS AFFIRMED.**