Judgment rendered April 5, 2023.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,983-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

KENYA COTTON                                    Plaintiff-Appellant

versus

WALMART, INC. D/B/A                             Defendant-Appellee
WALMART AND WAL-MART
LOUISIANA, LLC D/B/A
WALMART

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 623419

Honorable Ramon Lafitte, Judge

* * * * *

LAW OFFICE OF ALLEN COOPER, LLC          Counsel for Appellant
By: James Allen Cooper, Jr.

BLANCHARD, WALKER, O'QUIN               Counsel for Appellee
& ROBERTS
By: Stacey D. Williams

* * * * *

Before STONE, STEPHENS, and ELLENDER, JJ.

**STONE, J.**

This civil appeal arises from the First Judicial District Court, the Honorable Ramon Lafitte, presiding. The plaintiff, Kenya Cotton ("Ms. Cotton"), appeals the motion for summary judgment ("MSJ") granted in favor of defendant, Wal-Mart Louisiana, LLC and Walmart Inc. ("Walmart"). The trial court found that Walmart did not have actual or constructive knowledge of an unreasonably dangerous condition before Ms. Cotton slipped and fell on Walmart's premises. For the following reasons, we reverse and remand.

## FACTS AND PROCEDURAL HISTORY

On April 20, 2019, Ms. Cotton and her mother were shopping at the Walmart SuperCenter store on Mansfield Road in Shreveport, Louisiana. Ms. Cotton was shopping in the produce area. As she approached the bag dispenser, she slipped and fell in an unknown substance on the floor. She suffered bodily injuries and medical expenses as a result of the fall.

On April 20, 2020, Ms. Cotton filed a petition for damages against Walmart alleging negligence. She claimed Walmart knew or should have known of the unreasonably dangerous condition and that, despite this knowledge, Walmart did not take timely action to remedy or warn Ms. Cotton of the dangerous condition.

On September 29, 2021, Walmart filed a MSJ on the grounds that Ms. Cotton could not prove the essential elements of her claim, specifically: (1) that Walmart had actual or constructive notice of the floor condition prior to the slip, (2) that Walmart failed to exercise reasonable care as required by the Merchant Liability Statute, La. R.S. 9:2800.6; and (3) that Walmart caused the substance to be on the floor. In support of the motion, Walmart

attached the petition, and Ms. Cotton's and her mother's deposition testimony. Both women testified that they did not know how the substance got on the floor and they did not know if any Walmart employee knew of its existence on the floor.

Ms. Cotton opposed the MSJ asserting that there are factual issues relative to Walmart's constructive knowledge of the hazardous condition. Ms. Cotton submitted her deposition testimony and that of Chad Thomas ("Mr. Thomas"), the Walmart store representative and asset protection manager. In her deposition, Ms. Cotton testified that she did not see the substance on the floor or any wet floor signs prior to her fall. Ms. Cotton described the substance as a clear, slimy puddle. The video recording of the incident was played during the deposition, and Ms. Cotton identified herself and her mother on the video. She identified the pictures taken from the date of the incident, and verified that one of the pictures depicted the skid mark from her shoe as she fell. Also, Ms. Cotton testified that she completed an incident report the day of the fall and it was presented during the deposition testimony. After her fall, the Walmart maintenance man cleaned the substance and placed warning signs in that area.

In his deposition, Mr. Thomas confirmed that he saved the video footage from the incident and testified that it is Walmart's standard operating procedure to preserve an hour of video surveillance and to take five pictures of every accident. When presented with those pictures, Mr. Thomas admitted that there were brown stains at the base of the produce weight stand that appeared to have dried. He further stated that "it is possible" that stains can come from fruit and vegetables that are being handled, weighed, and bagged. He also testified that Walmart knows that

2

fruits and vegetables can leak while being weighed, handled, and bagged and despite this knowledge there was no mat located in that area where Ms. Cotton fell.

He testified that putting a mat in the vicinity where the produce is weighed and bagged should not cost much, but Walmart corporate representatives make those decisions. After viewing the surveillance footage and pictures taken from the day of the incident, Mr. Thomas testified that Ms. Cotton fell approximately 1 foot from the produce stand, and the brown stains near it appeared to have been there for a while. Mr. Thomas did not dispute that Ms. Cotton slipped on a substance on Walmart premises. He further testified that a customer with a full buggy was responsible for the substance being on the floor that caused Ms. Cotton to fall because that customer was in the exact spot several minutes before the fall, and if that customer did not cause the substance to be on the floor, the substance appeared to be on the floor before the video surveillance footage.[1]

He testified that Walmart floors are supposed to be cleaned daily, but they are not because associates do not come to work, and the floors are not cleaned as frequently as they should be. Mr. Thomas admitted that there were no caution signs, wet floor signs, or warnings of any kind in the area where Ms. Cotton fell to put her on notice that was a substance on the floor prior to her fall. He testified that it is all the employees' responsibilities to look for spills, debris, and clean it up when they see it and that no specific employee is assigned to the produce section of the store to inspect the floor

_____

[1] Mr. Thomas did not see Ms. Cotton's fall. He formed this opinion after viewing the video surveillance.

3

for hazards. Mr. Thomas also testified that it could take an hour before an employee discovered a substance on the floor.

On April 18, 2022, the trial court held a hearing on the MSJ and ruled in favor of Walmart. The trial court held that Walmart did not have actual or constructive knowledge of the substance's presence on the floor, and all of Ms. Cotton's assertions were speculative. Ms. Cotton now appeals, urging that there are multiple genuine issues of material fact that render summary judgment improper including: (1) the trial court erred in finding that it was immaterial whether the substance was on the floor either seven minutes or an hour before Ms. Cotton's fall; (2) the trial court erred in not finding that there were issues of material fact regarding the stains created from the dried liquid produce; (3) the trial court erred in finding that Walmart's failure to clean the floor did not create a genuine issue of material fact; and (4) the trial court erred in finding that there was no issue regarding Walmart's alleged negligence in failing to place a mat in or near the fruit and vegetable section.

## DISCUSSION

Ms. Cotton argues that the trial court erred in concluding that she failed to show that a genuine issue of material fact existed as to whether the substance was on the floor either seven minutes or an hour before her fall and whether Walmart had actual or constructive knowledge of the substance on the floor. Furthermore, she contends that the trial court erred in finding that the stains created from the dried produce did not create a genuine issue of material fact regarding the length of time the liquid was on the floor, and when Walmart should have discovered it. Ms. Cotton further asserts that Walmart's failure to exercise reasonable care by regularly cleaning the

4

floors and by placing mats in or near the fruit and vegetable section created genuine issues of material fact.

Walmart argues that Ms. Cotton cannot prove that it had actual or constructive knowledge that the substance was on the floor and that all of Ms. Cotton's claims rely on speculation.

Appellate courts review motions for summary judgment *de novo*, using the same criteria that govern the trial court's consideration of whether summary judgment is appropriate. *Peironnet v. Matador Res. Co.*, 12-2292 (La. 6/28/13), 144 So. 3d 791; *Coleman v. Lowery Carnival Co.*, 53,467 (La. App. 2 Cir. 4/22/20), 295 So. 3d 427, *writ denied*, 20-00594 (La. 9/23/20), 301 So. 3d 1179. We view the record and all reasonable inferences to be drawn from it in the light most favorable to the nonmoving party. *Hines v. Garrett*, 04-0806 (La. 6/25/04), 876 So. 2d 764; *Coleman v. Lowery Carnival Co.*, *supra*. A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. *Peironnet v. Matador Res. Co.*, *supra*. A genuine issue is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for a trial on that issue and summary judgment is appropriate. *Hines v. Garrett*, *supra*; *Franklin v. Dick*, 51,479 (La. App. 2 Cir. 6/21/17), 224 So. 3d 1130. In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony or

5

weigh evidence. *Marioneaux v. Marioneaux*, 52,212 (La. App. 2 Cir. 8/15/18), 254 So. 3d 13.

La. C.C.P. art. 966(D)(1) allocates the burden of proof on a motion for summary judgment as follows:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

The only documents that may be filed in support of or in opposition to the motion are pleadings, memoranda, affidavits, depositions, answers to interrogatories, certified medical records, written stipulations, and admissions. La. C.C.P. art. 966(A)(4). Furthermore, the court may consider only those documents filed in support of or in opposition to the motion for summary judgment and shall consider any documents to which no objection is made. La. C.C.P. art. 966(D)(2).

Imposition of liability against a merchant for a patron's injuries resulting from an accident on the merchant's premises is governed by the merchant liability statute, La. R.S. 9:2800.6, which provides, in part:

> A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.

> B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury…sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have

the burden of proving, in addition to all other elements of his cause of action, all of the following:

(1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

(2) The merchant either created or had actual or constructive notice of the condition which caused the damage, prior to the occurrence.

(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

C. Definitions:

(1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition.

Plaintiffs who slip and fall in merchants' premises bear a heavy burden of proof. *McDonald v. PNK (Bossier City), LLC*, 53,561 (La. App. 2 Cir. 9/23/20), 304 So. 3d 143, *writ denied*, 20-01416 (La. 2/9/21), 310 So. 3d 179. A plaintiff must establish that a defendant had constructive notice of an unreasonably dangerous condition. La. R.S. 9:2800.6(C)(1).

In the case *sub judice,* there are genuine issues of material fact. The evidence shows that Ms. Cotton was shopping in the Walmart produce section when she slipped and fell, a fact that Mr. Thomas did not dispute. The evidence establishes a genuine issue of material fact as to whether Walmart kept its floors in a reasonably safe condition. Mr. Thomas testified that Walmart failed to follow its own standard procedure because he

7

admitted that the floors were not being cleaned daily as company policy requires because of lack of employees coming to work. Furthermore, he testified that there are no employees assigned to inspect the produce section, although every employee is responsible for inspecting for hazards and knowing to clean up spills, should an employee encounter one. Ms. Cotton testified that she did not see any wet floor signs prior to her fall, but signs were placed after her fall.

It is undisputed that Walmart knew that fruits and vegetables were capable of leaking liquid while being weighed, handled, and bagged, yet Walmart failed to place a mat in that area. Furthermore, Mr. Thomas stated that it would not cost much for Walmart to place a slip resistant mat in the vicinity where Ms. Cotton fell. This evidence creates a genuine issue of material fact as to whether Walmart created an unreasonably dangerous condition for customers by not ensuring that the floors were cleaned properly and not placing a mat by the produce stand.

After viewing the picture taken of the area following the accident, Mr. Thomas testified that the brown stains at the base of the produce weight stand appeared to have dried, and those stains on the floor apparently existed for a while. He answered "it is possible" when asked if those stains came from customers handling, weighing, and bagging the fruits and vegetables. Furthermore, in his deposition testimony, Mr. Thomas stated that no specific employee was assigned to monitor the floor of the produce section, store employees failed to conduct regular walk-throughs of the store, and that it was all the employee's responsibility to look for spills. He also testified that it could take an hour for an employee to discover the substance on the floor.

8

Ms. Cotton produced evidence establishing genuine issues of material fact. Based on the summary judgment evidence, a trier of fact could determine that the floor where Ms. Cotton fell was wet for a sufficient length of time that reasonable diligence would have led to its discovery and remediation.

## CONCLUSION

For these reasons, the summary judgment is hereby reversed, and the matter remanded for further proceedings. All costs of this appeal are assessed to appellee.

**REVERSED AND REMANDED.**