Judgment rendered July 17, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,746-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

EFFIE BEARDEN AND RANDY                 Plaintiffs-Appellants
BEARDEN


versus


K & A OF MONROE, LLC, ET AL             Defendants-Appellees

* * * * *

Appealed from the
Third Judicial District Court for the
Parish of Union, Louisiana
Trial Court No. 49471


Honorable Thomas Wynn Rogers, Judge

* * * * *

LAW OFFICE OF TRACY WAYNE           Counsel for Appellants,
HOUCK, LLC                          Effie Bearden and Randy
By: Tracy Wayne Houck              Bearden


SMITH LAW OFFICES
By: Michael R. Smith


DAVENPORT, FILES & KELLY, LLP        Counsel for Appellees,
By: Martin Shane Craighead          K & A of Monroe, LLC,
                                    and ANPAC Louisiana
                                    Insurance Company


LAW OFFICE OF SARAH MURPHY BARRO    Counsel for Appellee,
By: Candace Rachelle LeBlanc        The Artesian Water
                                    Company, Inc.

* * * * *

Before STONE, COX, and MARCOTTE, JJ.

**STONE, J.**

This civil appeal arises from the Third Judicial District Court, the Honorable Thomas Rogers presiding. The plaintiffs are Effie Bearden and her husband Randy Bearden. They brought this suit claiming damages for personal injury to Mrs. Bearden (and for Mr. Bearden's resultant loss of consortium) resulting from her alleged slip and fall accident outside a gas station. The defendants are: (1) K&A of Monroe, LLC, the gas station owner/operator; (2) bagged ice vendor, Reddy Ice, LLC; (3) another bagged ice vendor, The Artesian Water Company, Inc.; and (4) their insurers. The trial court dismissed with prejudice the plaintiffs' claims against the gas station owner/operator, K&A of Monroe (the "store"), via a motion for summary judgment ("MSJ"). The plaintiffs appeal that judgment. For the reasons stated herein, we affirm.

## FACTS

In July of 2019, Mrs. Bearden fell on a walkway adjacent to the outer wall of a convenience store in Farmerville, Louisiana, as she walked in front of a freezer used to store bagged ice. The fall occurred near the doorway into the store. She filed suit alleging that there was a puddle in front of the freezer, and that is why she slipped and fell. In her deposition, she drew an "X" on a photograph of the location of the fall and indicated the puddle covered several square feet.

Excerpts from Mrs. Bearden's deposition were introduced for purposes of summary judgment. Therein, Mrs. Bearden testified that it was daytime when she fell (but could not recall whether it was morning or afternoon), and that she noticed the water for the first time after she fell. She admitted not remembering whether she had looked at the ground where she

was walking prior to the fall. Additionally, she admitted that, after she fell, she looked and had "no trouble" seeing the water. She also admitted she was not carrying anything in her arms that would occlude her vision.

Mrs. Bearden also testified that there was water in the spot where she fell "every time… [she] went to the store, but that day…[she] just didn't notice it until…[she] fell." Photographs that were discussed in and attached to Mrs. Bearden's deposition show that there are several freezers along the front of the store.

The deposition of a store employee, Estela Lopez ("Lopez"), was also submitted as summary judgment evidence. By the time of her deposition, she had been promoted to store manager, but she was a store cashier when Mrs. Bearden fell. Lopez testified that she recognized Mrs. Bearden as a regular customer of the store. Lopez stated that the alleged water in which plaintiff fell was not present when the store opened at 4 a.m. on the date of plaintiff's fall.[1] Lopez explained that she would have seen the puddle if it were there when she opened the store because that involved walking through the spot where Mrs. Bearden fell, and that she would have placed a wet floor sign had there been any water in front of any of the freezers. Lopez also stated that Mrs. Bearden reported the accident around 12:30 p.m. that day, but indicated it had happened that morning. She further stated that the store had "hundreds of customers coming in and …[Mrs. Bearden is] the only one that had a problem[,]…that…fell."

Lopez testified that if a freezer was empty, it was the store practice to disconnect that freezer from electricity upon closing the store for the night,

_____

[1] At that time, the store's hours were from 4 a.m. until midnight.

and leave it disconnected until it was restocked. This would cause the freezer to defrost and leak water. Lopez testified that she did not remember ever seeing "a concerning amount of water" coming from any of the freezers during store hours, and that the walkway was cleaned twice weekly. She also denied algal growth on the walkway where the freezers leaked. Plaintiff's counsel showed Lopez photographs of the area where plaintiff fell. All of these were taken over a year after the accident; some were taken more than two years afterward. She agreed that these photos appear to show discoloration on the ground in front of the freezer in front of which plaintiff fell and in front of a different freezer. When shown a photograph depicting water on the walkway, Lopez pointed out that it was not a "puddle" but merely a wet spot — "just a stain of the water."

Lopez also stated that the store is located near a lake and fishermen would dump ice chests and break ice on the ground in front of the coolers during store hours, and that third-party ice delivery workers would sometimes get water on the ground in front of the freezers when stocking the bagged ice. The ice delivery workers were instructed notify store personnel if such occurred.

Lopez also testified that it was store policy to place a wet floor sign if there was liquid present on the walkway where Mrs. Bearden fell (or anywhere in the store), and to clean up such conditions. She also said store employees walked through area of the fall every three hours to take out the trash.

The defense filed a motion for summary judgment ("MSJ") asserting that: (1) Mrs. Bearden could not produce prima facie evidence that the defendant had actual or constructive notice of the alleged puddle in which

plaintiff fell; and (2) because the puddle was open and obvious, Mrs. Bearden could not produce prima facie evidence that the puddle was an unreasonably dangerous condition. The trial court granted the defense's MSJ on the former ground and pretermitted the latter. Mrs. Bearden filed this appeal and assigns as error the trial court holding that plaintiff would be unable to prove that the defendant store created or had notice of the water in which she slipped.

## DISCUSSION

### Summary judgment

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. *Peironnet v. Matador Res. Co.*, 12-2292 (La. 6/28/13), 144 So. 3d 791, 814. A genuine issue is one regarding which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for a trial on that issue and summary judgment is appropriate. *Hines v. Garrett*, 04-0806 (La. 6/25/04), 876 So. 2d 764. Furthermore, "[i]n determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony, or weigh evidence." *Marioneaux v. Marioneaux*, 52,212 (La. App. 2 Cir. 8/15/18), 254 So. 3d 13, 20-21. The prohibition on making credibility determinations on summary judgment extends to expert affidavits admitted without objection. *Aziz v. Burnell*, 21-187 (La. App. 3 Cir. 11/3/21), 329 So. 3d 963, *writ denied*, 21-

4

01790 (La. 2/15/22), 332 So. 3d 1177; *Thompson v. Center for Pediatric and Adolescent Med., LLC*, 17-1088 (La. App. 1 Cir. 3/15/18), 244 So. 3d 441, *writ denied*, 18-0583 (La. 6/1/18), 243 So. 3d 1062. Finally, the court must draw those reasonable inferences from the undisputed facts which are most favorable to the party opposing the motion; likewise, all doubt must be resolved in the opposing party's favor. *Wyrick v. Golden Nugget Lake Charles, LLC*, 20-0665 (La. App. 1 Cir. 12/30/20), 317 So. 3d 708.

La. C.C.P. art. 966(D)(1) allocates the burden of proof on a motion for summary judgment as follows:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

Only certain types of documents may be offered in support of or in opposition to the MSJ. La. C.C.P. art. 966(A)(4). Likewise, the court may consider only those documents filed or referenced in support of or in opposition to the MSJ. La. C.C.P. art. 966(D)(2).

Courts of appeal apply a de novo standard when reviewing trial court decisions regarding a motion for summary judgment. *Farrell v. Circle K Stores, Inc.,* 22-00849 (La. 3/17/23), 359 So. 3d 467, 478.

**Merchant slip and fall statute**

La. R.S. 9:2800.6, the so-called "slip and fall" statute applicable to claims against "merchants," was originally enacted in 1988 and the last

5

amendment thereto was effective as of May 1, 1996. In relevant part, it

currently provides:

> A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
>
> B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, *in addition to all other elements of his cause of action*, all of the following:
>
> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.
>
> (2) The merchant *either created or had actual or constructive notice of the condition which caused the damage*, prior to the occurrence.
>
> (3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.
>
> C. Definitions:
>
> (1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition. (Emphasis added).

Thus, a merchant cannot be liable for a slip and fall injury on its

premises unless the plaintiff proves all three elements set forth in La. R.S.

9:2800.6(B). First, under subsection (B)(1), the plaintiff must prove that the

condition that caused the harm was unreasonably dangerous. Second,

subsection (B)(2) may be satisfied by proving that the merchant "created"

the unreasonably dangerous condition. Additionally, regardless of whether

6

the merchant created the unreasonably dangerous condition, the plaintiff may establish this element by proving the merchant had actual or constructive notice of the unreasonably dangerous condition. (Constructive notice is defined in subsection (C)(1)). Third, subsection (B)(3) requires the plaintiff to prove that the merchant failed to exercise reasonable care regarding the condition. Finally, it must be noted that all elements of an ordinary negligence claim must be satisfied in addition to the specific requirements of the statute. La. R.S. 9:2800.6(B).

**Unreasonably dangerous condition –La. R.S. 9:2800.6(B)(1)**

"[I]t is well settled that the existence of…a condition which presents an unreasonable risk of harm, cannot be inferred solely from the fact that the accident occurred." *Dufour v. E-Z Serve Convenience Stores, Inc.*, 98-996 (La. App. 5 Cir. 3/30/99), 731 So. 2d 915, 918. *Pryor v. Iberia Par. Sch. Bd.*, 10-1683 (La. 3/15/11), 60 So. 3d 594, 596–97 explains:

> In determining whether a defect presents an unreasonable risk of harm, the trier of fact must balance the gravity and risk of harm against the individual and societal rights and obligations, the social utility, and the cost and feasibility of repair. In determining whether a condition is unreasonably dangerous, courts have adopted a risk-utility balancing test. This test encompasses four factors: (1) the utility of the thing; (2) the likelihood and magnitude of harm, which includes the obviousness and apparentness of the condition; (3) the cost of preventing the harm; and (4) the nature of the plaintiffs' activities in terms of its social utility, or whether it is dangerous by nature.

If the harm-causing condition should be open and obvious to all reasonable people who encounter it, that may dictate that the condition is not unreasonably dangerous. Recently, in *Farrell*, *supra*, the Louisiana Supreme Court articulated the open and obvious inquiry as follows:

> For a hazard to be considered open and obvious, it must be one that is open and obvious to all who may encounter it.

> The open and obvious concept asks *whether the complained of condition would be apparent to any reasonable person who might encounter it.* If so, that reasonable person would avoid it, and the factor will weigh in favor of finding the condition not unreasonably dangerous. Whether the plaintiff has knowledge of the condition is irrelevant in determining whether the thing is defective. (Emphasis added).

The emphasized language in the above block quote dovetails with the principle that "a pedestrian has a duty to see that which should be seen and is bound to observe his course to see if his pathway is clear." *Bufkin v. Felipe's Louisiana, LLC*, 14-0288 (La. 10/15/14), 171 So. 3d 851, 855.

*Farrell* clarified that whether the condition is open and obvious inquiry is merely a factor in determining whether the defendant breached a duty of care, "not a consideration for determining the legal question of the existence of a duty." *Id.*

> [W]hether a condition is open and obvious is embraced within the breach of the duty element of the duty/risk analysis and is not a jurisprudential doctrine barring recovery, but only a factor of the risk/utility balancing test. Specifically, it falls within the ambit of the second factor of the risk/utility balancing test, which considers the likelihood and magnitude of the harm, and it is not a consideration for determining the legal question of the existence of a duty. Thus, although this Court has so stated before, it is inaccurate to profess that a defendant generally does not have a duty to protect against an open an obvious condition…

Ultimately, the *Farrell* court held that the defendant, a gas station, was entitled to summary judgment because the plaintiffs could not prove that the puddle in which she fell was unreasonably dangerous, stating:

> Although the breach of the duty element involves a mixed question of law and fact, summary judgment is not necessarily precluded. Summary judgment, based on the absence of liability, may be granted upon a finding that reasonable minds could only agree that the condition was not unreasonably dangerous; therefore, the defendant did

not breach the duty owed. In such instance, the plaintiff would be unable to prove the breach element at trial.

*Id. Farrell* held that the puddle in which the plaintiff fell was not unreasonably dangerous because: (1) it was quite large—and thus obvious; witnesses compared its size to that of an automobile and even an 18-wheeler; and (2) it was at the edge of the parking lot, i.e., an area "not customarily traversed" by customers. *Farrell* so held despite evidence that there was slippery algae in the puddle, and that the algae may have been hard to see in the "dirty 'brownish-gray'" water.

**Merchant created or had notice of the condition— La. R.S. 9:2800.6(B)(2)**

As previously explained, subsection (B)(2) may be satisfied by three different means, namely, proof that the merchant: (1) had *constructive notice* of the unreasonably dangerous condition; (2) had *actual notice* of it; or (3) *created* it.

*Constructive notice.* Recently, we reiterated the plaintiff's burden of proof regarding constructive notice:

> Where a claimant relies upon constructive notice, as defined in La. R.S. 9:2800.6(C)(1)…the claimant must establish that the damage-causing condition existed for a period of time sufficient to place the merchant on constructive notice of the condition's existence. To prove constructive notice, the claimant must show that the substance remained on the floor for such a period of time that the defendant merchant would have discovered its existence through the exercise of ordinary care.
> Though the time period need not be specific in minutes or hours, constructive notice requires that the claimant prove the condition existed for some time period prior to the fall. The evidence required to prove the temporal element may be either direct or circumstantial.
> Thus, a claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the

9

> burden of proving constructive notice. (Internal citations and quotation marks omitted).

*Bourn v. Federated Mut. Ins. Co.*, 54,977 (La. App. 2 Cir. 4/5/23), 361 So. 3d 538, 544–45.

**Creation of hazard**. As a threshold matter, a plaintiff arguing that the merchant created a slipping or tripping hazard must show the source of the substance or object constituting the hazard. *Dufour, supra,* illustrates this principle in holding that the trial court did not err in ruling that the plaintiff failed to carry his burden of proving creation under La. R.S. 9:2800.6(B)(2) where there was an unreasonably dangerous puddle in front of an "ice cooler" inside a convenience store, *but no evidence that the puddle came from the ice cooler*.

In *Matlock v. Brookshire Grocery Co.*, 53,069 (La. App. 2 Cir. 11/20/19), 285 So. 3d 76, 82, *writ denied,* 20-00259 (La. 4/27/20), 295 So. 3d 389 this court addressed what constitutes "creation" of a hazard under subsection (B)(2). Therein the plaintiff slipped and fell in some watermelon juice on the floor of a grocery store and argued that the grocer "created" the hazard by failing to take reasonable precautions against watermelon juice leaking onto the floor, despite knowing that such was a recurring problem. We rejected that argument, explaining:

> This argument blurs the lines of the elements of proof required by La. R.S. 9:2800.6. Matlock's assertions regarding Brookshire's creation of the puddle actually address the reasonable care element of subsection B(3). Matlock's argument suggests a merchant's failure to exercise reasonable care is the equivalent of a merchant creating a dangerous condition. However, such an interpretation would nullify subsection B(3) of the statute. …
>
> Matlock has simply failed to present any factual support for his speculation that Brookshire's employees or

10

methods were responsible for creating the puddle of watermelon juice Matlock slipped in. Matlock offers no evidence remotely supporting the notion that but for Brookshire's procedure for purchasing, storing, inspecting, and displaying the watermelons, the puddle of watermelon juice on which he slipped would not have been created.

*Matlock* relied on *Ross v. Schwegmann Giant Super Markets, Inc.*, 98-1036 (La. App. 1 Cir. 5/14/99), 734 So. 2d 910, *writ denied*, 99-1741 (La. 10/1/99), 748 So. 2d 444, wherein the First Circuit affirmed the grant of summary judgment in favor of a grocer in a slip and fall case because the plaintiff could not satisfy La. R.S. 9:2800.6(B)(2). The defendant offered free samples of crab salad at the seafood counter, and the plaintiff slipped and fell in a small amount of crab salad on the floor 10 to 12 feet from the seafood counter. Seeking to obviate her burden of proving notice, the plaintiff argued that the defendant "created" the hazard:

> The Frenzel [i.e., plaintiff's expert] affidavit asserts Schwegmann failed to have reasonable inspection procedures. According to Frenzel, spillage or droppage by customers participating in unsupervised sampling is foreseeable and highly likely to occur. Accordingly, Frenzel concludes Schwegmann failed to exercise reasonable care in creating the crab salad floor hazard where it was known that customers who sampled the crab salad would spill or drop it on the floor.

The *Ross* court rejected that argument, stating:

> The condition which caused Ross's fall was not the sampling station offering samples of crab salad to Schwegmann's customers, but the portion of crab salad on the floor some ten to twelve feet away from the sampling station. The affidavit submitted by Frenzel contends that due to the foreseeability and likelihood that the customers would drop portions of the crab salad sample on the floor means that Schwegmann created a situation which led to Ross's fall. However, we find Frenzel's assertions address the element of proof required by LSA–R.S. 9:2800.6 B(3), instead of whether Schwegmann was responsible for the actual spill or drop of the crab salad.

*Id*. at 913. *Ross* explained its construction of the statute:

11

If the requirements of a plaintiff's burden of proof under LSA–R.S. 9:2800.6 B are read as Ross suggests, a merchant's failure to exercise reasonable care is the equivalent of a merchant creating a dangerous condition. Such an interpretation would nullify Section B(3) of the statute. Instead, we find that the wording of LSA–R.S. 9:2800.6 B(2) which requires plaintiff prove that *"the merchant ... created ... the condition which caused the damage"* means there must be proof that the merchant is directly responsible for the spill or other hazardous condition. In this case, there is no evidence that would establish that the crab salad found its way onto the floor because of an act by a Schwegmann employee. (Emphasis added).

*Id.*

Recently, in *Salzman v. Matherne's Supermarket at Riverlands, L.L.C.*, 22-404 (La. App. 5 Cir. 6/22/23), 367 So. 3d 897, 905–06, *reh'g denied* (July 13, 2023), *writ denied*, 23-01116 (La. 11/15/23), 373 So. 3d 73, the Louisiana Fifth Circuit Court of Appeal deviated from *Matlock, supra,* and *Ross, supra.* In *Salzman,* the defendant, a grocer, undertook packaging of raw chicken products in its butcher shop. The plaintiff slipped in a puddle of "chicken juice" that apparently leaked onto the floor of a shopping aisle while such package was being handled by a customer. *Salzman* held that this was prima facie evidence of that the grocer "created" the slipping hazard.[2]

## Arguments

---

[2] Similarly, the United States Fifth Circuit Court of Appeals held that a Wal-Mart store's leaky roof, which the merchant knew had episodically leaked water onto the floor, raised a genuine issue of material fact as to the merchant's "creation" of the hazard under Louisiana law, despite any affirmative acts by Wal-Mart employees in causing the leaks. *Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 F.3d 742 (5th Cir. 2017).

The trial court granted summary judgment because it found plaintiffs could not prove the defendant had notice of the water in which Mrs. Bearden slipped. The plaintiffs invoke *Salzman* and *Deshotel* as authority for her contention that her summary judgment evidence establishes a genuine issue of material fact regarding whether the defendant, a gas station operator, "created" the hazard because: (1) the defendant was aware of recurring episodes of water puddling on the ground in front of the third-party freezers as they defrosted; (2) a freezer would defrost when the defendant unplugged it (because it was out of ice); and (3) the defendant failed to take adequate remedial measures. The plaintiffs conclude that, accordingly, they need not prove that the defendant had notice of the water in which Mrs. Bearden slipped to defeat summary judgment.

The defendant-appellee, in its brief to this court, contends that summary judgment was appropriate because the summary judgment evidence does not constitute prima facie proof: (1) that the water in which Mrs. Bearden actually fell came from the freezer; or (2) that the water constituted an unreasonably dangerous condition, because it was open and obvious. The plaintiffs do not address the open and obvious issue in their brief to this court, despite it being raised in the defense's MSJ.

**Analysis**

The trial court was correct. To defeat the store's MSJ, the plaintiffs had to produce summary judgment evidence sufficient for a reasonable factfinder to conclude that, more likely than not, the defendant had actual or constructive notice of the puddle in which she slipped, or the defendant created the puddle in which Mrs. Bearden slipped. The plaintiffs failed to prove either. The plaintiffs have no evidence to show that the water in

13

which she slipped came from the defrosting of the freezer as a result of the store unplugging it (instead of some other source or some other reason for the freezer leaking water). This defeats their argument that the store created the puddle. *Dufour, supra.* Likewise, the evidence provides no approximation whatsoever of how long the puddle existed before Mrs. Bearden fell in it. Accordingly, the plaintiffs cannot prevail on a theory of constructive knowledge. La. R.S. 9:2800.6(C)(1); *Bourn, supra.* Nor is there any evidence that any store employee had actual knowledge of the puddle. The plaintiffs failed to carry their burden of proof regarding La. R.S. 9:2800.6(B)(2). This alone requires us to affirm the trial court's judgment.

However, the plaintiffs likewise failed to carry their burden of proving that the puddle was an unreasonably dangerous condition as required by La. R.S. 9:2800.6(B)(1). The puddle was in an outdoor location during daylight hours, and covered an area of several square feet (per Mrs. Bearden's drawing on a photograph of the location of her fall). All evidence on point indicates that there was "no trouble" seeing the puddle, and that the only reason Mrs. Bearden did not see it before falling is that she had not looked where she was stepping. All evidence on point indicates that the puddle would have been obvious to reasonable person traversing the area. *Bufkin, supra.*

Furthermore, nowhere in the summary judgment evidence does Mrs. Bearden say that stepping in the puddle is what *caused* her to fall, i.e., she never claimed that she *slipped* in the puddle. On the contrary, Mrs. Bearden in her deposition said that every time she went to the store, there was a puddle in the location where she fell, but she had never fallen in "that water" before the incident in question. Additionally, Lopez testified that there had

14

been no other slip and fall incidents at the store, and that the walkway was cleaned twice per week. Further yet, there was no evidence presented regarding whether the concrete surface of the walkway was smooth or abrasive. Under these circumstances, the mere fact that Mrs. Bearden fell in the puddle cannot reasonably support the inference that she fell because it was slippery. *Dufour, supra; Farrell, supra.* It is common human experience that not all puddles of water on concrete are slippery; rather, some are slippery while others are not.[3]

Given the open and obvious nature of the puddle, Mrs. Bearden's testimony indicating she had walked through a puddle in that location without incident multiple times in the past, the complete nonexistence of testimony that the water *caused* plaintiff to fall, and the regular cleaning of the walkway, the plaintiffs have failed to produce prima facie evidence that the puddle was unreasonably dangerous. For this additional, independent reason, we are constrained to affirm the trial court judgment.

## CONCLUSION

The judgment of the trial court is **AFFIRMED.** All costs of this appeal are taxed to the plaintiffs.

---

[3] The plaintiff's theory that the puddle in which she fell was slippery because it had algae growing in it is completely unsupported by evidence (aside from her lawyer's speculation based on pictures taken over a year after the accident).