Judgment rendered October 2, 2024.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,877-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

GERMEKA WALLACE                           Plaintiff-Appellant

versus

BROOKSHIRE GROCERY                        Defendant-Appellee
COMPANY

* * * * *

Appealed from the
Third Judicial District Court for the
Parish of Union, Louisiana
Trial Court No. 49,598

Honorable Thomas Wynn Rogers, Judge

* * * * *

SMITH, NWOKORIE & SMITH            Counsel for Appellant
By: Brian G. Smith


HUDSON, POTTS & BERNSTEIN, LLP      Counsel for Appellee
By: Sara White
    Donald H. Zeigler, III

* * * * *

Before STONE, HUNTER, and MARCOTTE, JJ.


HUNTER, J., dissents with written reasons.

**STONE, J.**

This civil appeal arises from the Third Judicial District Court, the Honorable Thomas Rogers presiding. The appellant-plaintiff, Germeka Wallace (the "plaintiff"), sued seeking damages for personal injury she allegedly sustained as a result of an alleged slip-and-fall accident inside a grocery store operated by Brookshire Grocery Company ("Brookshire"), the appellee-defendant. The trial court granted the defendant's motion for summary judgment ("MSJ") and dismissed the case with prejudice. The plaintiff now appeals. For the following reasons we affirm the trial court's judgment.

## FACTS AND PROCEDURAL HISTORY

On November 3, 2019, the plaintiff, Germeka Wallace, was shopping at a Brookshire store in Farmerville, Louisiana, when she slipped and fell in a "big puddle of water" in the produce area of the store. She believed the puddle on the floor was a result of water leaking (possibly from a cooler). Subsequently, the plaintiff filed a petition for damages, alleging she suffered injuries to her knee due to her fall.

After discovery, Brookshire filed a MSJ arguing that the plaintiff would not be able to prove an essential element of her claim, *i.e.*, she failed to introduce for the purpose of summary judgment prima facie evidence that Brookshire either created the hazardous condition or had actual or constructive notice of the condition prior to the incident (as is required of such claims by La. R.S. 9:2800.6(B)). In support of its motion, Brookshire introduced affidavits of an assistant manager, Marcus Jaggers, and a perishable manager, Logan Frost. Jaggers and Frost attested as follows: they were in the store at the time of plaintiff's fall, but they did not witness the

incident; neither they, nor any other employee, placed any wet, slippery, or liquid substance on the floor; they did not allow any wet, slippery, or liquid substance to be placed on the floor; and neither they, nor any other employee, had any knowledge of how long the substance may have been on the floor prior to plaintiff's fall. Frost further attested he was in the produce area approximately seven minutes prior to plaintiff's fall, and the area was clean and dry at that time.

Brookshire also submitted a transcript of an audio recording of an interview when plaintiff was interviewed by a claims manager. During the interview, plaintiff stated she entered the store, went to the produce section, possibly picked up a cabbage, turned to walk toward the deli, and slipped and fell on a wet substance, injuring her knee. Brookshire also submitted the plaintiff's deposition, wherein she stated there was "a big puddle of water" on the floor, and she did not know how long the water had been there. She also testified she did not see the liquid on the floor or any "buggy tracks," dirt, or footprints through the liquid. Plaintiff also reaffirmed her prior statement that she did not know how long the liquid had been on the floor.

In opposition to the motion for summary judgment, plaintiff submitted her own affidavit, in which she attested she slipped on a clear, wet substance in the produce section of the grocery store, and there were no "wet floor" signs to warn customers of a wet substance on the floor. She also attested she overheard one of Brookshire's employees state a "cooler was out."

## DISCUSSION

**Summary judgment**

After an opportunity for adequate discovery, a motion for summary judgment shall be granted if the motion, memorandum, and supporting

2

documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966(A)(3). A fact is "material" when its existence or nonexistence may be essential to plaintiff's cause of action under the applicable theory of recovery. *Peironnet v. Matador Res. Co.*, 12-2292 (La. 6/28/13), 144 So. 3d 791, 814. A genuine issue is one regarding which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for a trial on that issue and summary judgment is appropriate. *Hines v. Garrett*, 04-0806 (La. 6/25/04), 876 So. 2d 764. Furthermore, "[i]n determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony, or weigh evidence."[1] *Marioneaux v. Marioneaux*, 52,212 (La. App. 2 Cir. 8/15/18), 254 So. 3d 13, 20-21. Finally, the court must draw those reasonable inferences from the undisputed facts which are most favorable to the party opposing the motion; likewise, all doubt must be resolved in the opposing party's favor. *Wyrick v. Golden Nugget Lake Charles, LLC*, 20-0665 (La. App. 1 Cir. 12/30/20), 317 So. 3d 708.

La. C.C.P. art. 966(D)(1) allocates the burden of proof on a motion for summary judgment as follows:

> The burden of proof rests with the mover. Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not

---

[1] However, in construing F.R.C.P. 56, which is the federal analog of La. C.C.P. art. 966, the United States Supreme Court held that there was no genuine issue of material fact despite conflicting testimony on the point of contention. In so doing, the court recognized an exception to the general rule that conflicting testimony per se constitutes a genuine issue; the exception is applicable if objective evidence (e.g., video recording) clearly corroborates one affiant's testimony and clearly disproves the other's testimony to such a degree that reasonable minds could not differ. *Scott v. Harris*, 550 U.S. 372, 378–81, 127 S. Ct. 1769, 1774–76, 167 L. Ed. 2d 686 (2007).

3

require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law.

Only certain types of documents may be offered in support of or in opposition to the MSJ. La. C.C.P. art. 966(A)(4). Likewise, the court may consider only those documents filed or referenced in support of or in opposition to the MSJ. La. C.C.P. art. 966(D)(2).

Courts of appeal apply a de novo standard when reviewing trial court decisions regarding a motion for summary judgment. *Farrell v. Circle K Stores, Inc.,* 22-00849 (La. 3/17/23), 359 So. 3d 467, 478.

**Merchant slip and fall statute**

La. R.S. 9:2800.6, the so-called "slip and fall" statute applicable to claims against "merchants," was originally enacted in 1988 and the last amendment thereto was effective as of May 1, 1996. In relevant part, it currently provides:

> A. A merchant owes a duty to persons who use his premises to exercise reasonable care to keep his aisles, passageways, and floors in a reasonably safe condition. This duty includes a reasonable effort to keep the premises free of any hazardous conditions which reasonably might give rise to damage.
> B. In a negligence claim brought against a merchant by a person lawfully on the merchant's premises for damages as a result of an injury, death, or loss sustained because of a fall due to a condition existing in or on a merchant's premises, the claimant shall have the burden of proving, *in addition to all other elements of his cause of action*, all of the following:
> (1) The condition presented an unreasonable risk of harm to the claimant and that risk of harm was reasonably foreseeable.

4

(2) The merchant *either created or had actual or constructive notice of the condition which caused the damage*, prior to the occurrence.

(3) The merchant failed to exercise reasonable care. In determining reasonable care, the absence of a written or verbal uniform cleanup or safety procedure is insufficient, alone, to prove failure to exercise reasonable care.

C. Definitions:

(1) "Constructive notice" means the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care. The presence of an employee of the merchant in the vicinity in which the condition exists does not, alone, constitute constructive notice, unless it is shown that the employee knew, or in the exercise of reasonable care should have known, of the condition. (Emphasis added).

Recently, in *Bearden v. K & A of Monroe, LLC,* 55,746 (La. App. 2 Cir. 7/17/24), we explained:

[A] merchant cannot be liable for a slip and fall injury on its premises unless the plaintiff proves all three elements set forth in La. R.S. 9:2800.6(B). First, under subsection (B)(1), the plaintiff must prove that the condition that caused the harm was unreasonably dangerous. Second, subsection (B)(2) may be satisfied by proving that the merchant "created" the unreasonably dangerous condition. Additionally, regardless of whether the merchant created the unreasonably dangerous condition, the plaintiff may establish this element by proving the merchant had actual or constructive notice of the unreasonably dangerous condition. (Constructive notice is defined in subsection (C)(1)). Third, subsection (B)(3) requires the plaintiff to prove that the merchant failed to exercise reasonable care regarding the condition. Finally, it must be noted that all elements of an ordinary negligence claim must be satisfied in addition to the specific requirements of the statute. La. R.S. 9:2800.6(B).

As explained in *Bearden*, *supra*, subsection (B)(2) may be satisfied by three different means, namely, proof that the merchant: (1) had *constructive notice* of the unreasonably dangerous condition; (2) had *actual notice* of it; or (3) *created* it.

5

*Constructive notice.*  Recently, we reiterated the plaintiff's burden of proof regarding constructive notice:

> Where a claimant relies upon constructive notice, as defined in La. R.S. 9:2800.6(C)(1)...the claimant must establish that the damage-causing condition existed for a period of time sufficient to place the merchant on constructive notice of the condition's existence. To prove constructive notice, the claimant must show that the substance remained on the floor for such a period of time that the defendant merchant would have discovered its existence through the exercise of ordinary care.
> Though the time period need not be specific in minutes or hours, constructive notice requires that the claimant prove the condition existed for some time period prior to the fall. The evidence required to prove the temporal element may be either direct or circumstantial.
> Thus, a claimant who simply shows that the condition existed without an additional showing that the condition existed for some time before the fall has not carried the burden of proving constructive notice. (Internal citations and quotation marks omitted).

*Bourn v. Federated Mut. Ins. Co.*, 54,977 (La. App. 2 Cir. 4/5/23), 361 So. 3d 538, 544–45.

*Creation of hazard.*  As a threshold matter, a plaintiff arguing that the merchant created a slipping or tripping hazard must show the source of the substance or object constituting the hazard.  *Dufour v. E-Z Serve Convenience Stores, Inc.*, 98-996 (La. App. 5 Cir. 3/30/99), 731 So. 2d 915 illustrates this principle in holding that the trial court did not err in ruling that the plaintiff failed to carry his burden of proving creation under La. R.S. 9:2800.6(B)(2) where there was an unreasonably dangerous puddle in front of an "ice cooler" inside a convenience store, *but no evidence that the puddle came from the ice cooler*.

*Bearden*, *supra*, addressed an argument that the defendant (a convenience store) "created" the puddle in which the plaintiff slipped. There were multiple freezers used to hold bagged ice for retail in front of the

6

store. The store manager admitted that the store's policy was to unplug the empty freezers, and this would cause them to defrost and leak water. The plaintiff relied on this testimony as proof that the store created the hazard, despite the absence of evidence that the freezer in question had been unplugged at such a time before plaintiff's fall as would indicate the unplugging caused the puddle. We held that the plaintiff failed to muster prima facie evidence that the store "created" the puddle, stating:

> The plaintiffs have no evidence to show that the water in which she slipped came from the defrosting of the freezer as a result of the store unplugging it (instead of some other source or some other reason for the freezer leaking water). This defeats their argument that the store created the puddle.

Ordinarily, to prevail on a creation theory, a plaintiff must further prove that the defendant's affirmative conduct directly and immediately created the hazard. In *Matlock v. Brookshire Grocery Co.*, 53,069 (La. App. 2 Cir. 11/20/19), 285 So. 3d 76, 82, *writ denied,* 20-00259 (La. 4/27/20), 295 So. 3d 389, the plaintiff slipped and fell in some watermelon juice on the floor of a grocery store and argued that the grocer "created" the hazard by failing to take reasonable precautions against watermelon juice leaking onto the floor, despite knowing that such was a recurring problem. We rejected that argument, explaining:

> This argument blurs the lines of the elements of proof required by La. R.S. 9:2800.6. Matlock's assertions regarding Brookshire's creation of the puddle actually address the reasonable care element of subsection B(3). Matlock's argument suggests a merchant's failure to exercise reasonable care is the equivalent of a merchant creating a dangerous condition. However, such an interpretation would nullify subsection B(3) of the statute.
> ...
> Matlock has simply failed to present any factual support for his speculation that Brookshire's employees or methods were responsible for creating the puddle of

7

watermelon juice Matlock slipped in. Matlock offers no evidence remotely supporting the notion that but for Brookshire's procedure for purchasing, storing, inspecting, and displaying the watermelons, the puddle of watermelon juice on which he slipped would not have been created.

*Id.*

*Matlock* relied on *Ross v. Schwegmann Giant Super Markets, Inc.*, 98-1036 (La. App. 1 Cir. 5/14/99), 734 So. 2d 910, *writ denied*, 99-1741 (La. 10/1/99), 748 So. 2d 444, wherein the First Circuit affirmed the grant of summary judgment in favor of a grocer in a slip and fall case because the plaintiff could not satisfy La. R.S. 9:2800.6(B)(2). The defendant offered free samples of crab salad at the seafood counter, and the plaintiff slipped and fell in a small amount of crab salad on the floor 10 to 12 feet from the seafood counter. Seeking to obviate her burden of proving notice, the plaintiff argued that the defendant "created" the hazard:

> The Frenzel [i.e., plaintiff's expert] affidavit asserts Schwegmann failed to have reasonable inspection procedures. According to Frenzel, spillage or droppage by customers participating in unsupervised sampling is foreseeable and highly likely to occur. Accordingly, Frenzel concludes Schwegmann failed to exercise reasonable care in creating the crab salad floor hazard where it was known that customers who sampled the crab salad would spill or drop it on the floor.

The *Ross* court rejected that argument, stating:

> The condition which caused Ross's fall was not the sampling station offering samples of crab salad to Schwegmann's customers, but the portion of crab salad on the floor some ten to twelve feet away from the sampling station. The affidavit submitted by Frenzel contends that due to the foreseeability and likelihood that the customers would drop portions of the crab salad sample on the floor means that Schwegmann created a situation which led to Ross's fall. However, we find Frenzel's assertions address the element of proof required by LSA–R.S. 9:2800.6B(3), instead of whether Schwegmann was responsible for the actual spill or drop of the crab salad.

8

*Id.* at 913. The *Ross* opinion explained its construction of the statute synonymously with our articulation in *Matlock, supra.*[2]

**Analysis**

In this case, the plaintiff has failed to introduce prima facie evidence of the defendant's notice or creation of the puddle. As astutely stated by the trial judge in the written reasons for judgment:

> The Plaintiff has argued that a statement by an unknown employee that the "cooler was out" creates a disputed fact as to the cause of the wet substance. The Court would beg to differ. We don't know what cooler was referred to, where the cooler was located or if the cooler being "out" created a leak of a substance which was the same substance as that Ms. Wallace slipped on. Furthermore, there is absolutely nothing to show that Brookshire was aware that this cooler being out created the hazardous condition or how long the hazardous condition had existed except that it had to be less than seven minutes.

*Creation of hazard.* The plaintiff's only supposed evidence of creation is: (1) her statement that she overheard an unidentified employee say that a "cooler was out"; (2) her statement there was no wet floor sign near the puddle; and (3) the assistant manager's admission that Brookshire

---

[2] In particular, *Ross* stated:
> If the requirements of a plaintiff's burden of proof under LSA–R.S. 9:2800.6 B are read as Ross suggests, a merchant's failure to exercise reasonable care is the equivalent of a merchant creating a dangerous condition. Such an interpretation would nullify Section B(3) of the statute. Instead, we find that the wording of LSA–R.S. 9:2800.6 B(2) which requires plaintiff prove that *"the merchant ... created ... the condition which caused the damage" means there must be proof that the merchant is directly responsible for the spill or other hazardous condition.* In this case, there is no evidence that would establish that the crab salad found its way onto the floor because of an act by a Schwegmann employee. (Emphasis added).

Recently, however, in *Salzman v. Matherne's Supermarket at Riverlands, L.L.C.*, 22-404 (La. App. 5 Cir. 6/22/23), 367 So. 3d 897, 905–06, *reh'g denied* (July 13, 2023), *writ denied*, 23-01116 (La. 11/15/23), 373 So. 3d 73, the Louisiana Fifth Circuit Court of Appeal deviated from *Matlock, supra,* and *Ross, supra.* In *Salzman,* the defendant, a grocer, undertook packaging of raw chicken products in its butcher shop. The plaintiff slipped in a puddle of "chicken juice" that apparently leaked onto the floor of a shopping aisle while such package was being handled by a customer. *Salzman* held that this was prima facie evidence of that the grocer "created" the slipping hazard.

9

lacks a protocol for inspecting the produce section of the store. Even if it is assumed that these statements are true, they nonetheless fail to prove that a cooler was the source of the puddle in which the plaintiff slipped, or that any Brookshire employee affirmatively caused the cooler to leak. Thus, the plaintiff has failed to establish a prima facie case that Brookshire created the puddle. Mere failure to respond appropriately to a known leak is insufficient to constitute "creation." The plaintiff erroneously conflates creation of a hazard (subsection (B)(2)) with failure to exercise reasonable care *in responding to the hazard* (subsection (B)(3)). *Bearden*, *supra*; *Matlock*, *supra*; *Ross*, *supra*.

*Constructive notice of hazard*. Logan Frost was "perishable manager" of the Brookshire store at the time of the accident. He testified (in his affidavit) that he was in the area of the fall seven minutes beforehand, and at that time, there was no puddle on the floor. In her brief to this court, the plaintiff acknowledges that the store's video recording shows Frost pushing a shopping cart through the area at that time. The plaintiff argues that the video also shows that Frost was not looking down at the floor or conducting an inspection, and thus may not have noticed the puddle. This argument amounts to an attack on the credibility of Frost's uncontroverted testimony. Generally, for purposes of summary judgment, the credibility of a fact witness' *uncontroverted* testimony is conclusively presumed (provided it was properly admitted).[3] Conversely, disagreement among witnesses

---

[3] There are, however, significant limitations on this general rule. For example, in *Tully v. Granillo*, 55,211 (La. App. 2 Cir. 4/24/24), 384 So. 3d 470, 480, *reh'g denied* (May 16, 2024), the majority held that a personal injury plaintiff failed to introduce prima facie proof of her lack of pre-accident symptoms because the only summary judgment evidence on that point was her treating physician's affidavit reflecting plaintiff's hearsay statement that she had no symptoms pre-accident. Citing the requirement of personal

generally constitutes a genuine issue. *Marioneaux*, *supra*. The video does not contradict this affidavit testimony. Assuming for the sake of argument that the video does somewhat militate against the credibility of the affidavit testimony, it still certainly does not rise to the level of invoking *Scott v. Harris, supra.* Frost's affidavit testimony is presumed true for purposes of summary judgment. Accordingly, the puddle is considered to have existed for an unknown amount of time somewhere between zero and seven minutes before the plaintiff's fall. Without more, this is insufficient to constitute prima facie evidence of constructive notice.

## CONCLUSION

The judgment of the trial court is **AFFIRMED.** The plaintiff is taxed with all costs of this appeal.

---

knowledge in La. C.C.P. art. 967, the majority stated that the plaintiff's own affidavit was necessary to establish this point.

**HUNTER, J., dissenting.**

It is undisputed Brookshire's employees did not notice the liquid on the floor until after the plaintiff's fall. In his deposition, the assistant store manager testified Brookshire utilized an automatic system, whereby water came down and sprayed the produce. The assistant manager also testified all Brookshire's employees were responsible for inspecting the premises on a continuous basis; however, no one specific employee was assigned to do so. In fact, the employees did not know if the liquid had been on the floor for seconds, minutes, or hours. The manager of the perishables department attested he was in the produce department approximately seven minutes before plaintiff fell, and he did not see any water on the floor. However, he did not attest he was in the exact location of plaintiff's fall, or he specifically inspected the floor for spills, leaks, and/or liquids.

Brookshire knew or should have known produce items, such as fruits and vegetables were capable of leaking liquid while being stored, handled, weighed, and bagged. Further, Brookshire knew it utilized a system whereby the produce was watered via an automatic system. Nevertheless, Brookshire failed to devise a system in the produce department to ensure the floors were kept dry and free from spills and hazards. The evidence submitted creates a genuine issue of material fact as to whether Brookshire created an unreasonably dangerous condition for customers by not ensuring floors were cleaned properly in the produce department. Based on the record before us, we find a trier of fact could determine the liquid on the floor where plaintiff fell existed over a sufficient length of time that reasonable diligence would have led to its discovery and remediation. Credibility determinations by the trier of fact are necessary to resolve the issue of whether Brookshire

1

exercised reasonable diligence to recognize the danger presented by the liquid substance on the floor.

In this close case, I believe the evidence revealed in this summary judgment setting shows multiple factors which bear upon the issue of constructive notice. The constructive notice issue under the particular facts of this case requires the weighing of the implications of multiple sources of circumstantial evidence and, therefore, presents material issues of fact. For these reasons, I believe the summary judgment should be reversed and the matter remanded for further proceedings.

Accordingly, I dissent.